# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF
# MASSACHUSETTS

| | |
|---|---|
| BRENT ANDREW BRACKETT ARBOGAST,<br><br>Plaintiff,<br><br>vs.<br><br>WYETH<br><br>Defendants | Case No.: 1:06-CV-10333<br><br>MEMORANDUM OF LAW<br>ORAL ARGUMENT REQUESTED |

## MOTION FOR RELIEF OF "JUDGEMENT", SANCTIONS, RECUSAL, AND JUDGEMENT ON THE PLEADINGS

Plaintiff Brent Arbogast *pro se*, submits this Memorandum of Law in support of his Motions for; Relief from Judgement pursuant to Fed.R.Civ.P. 60(d), sanctions against attorney Michael A. Fitzhugh and Wyeth pursuant to Fed.R.Civ.P. 26(g), disqualification of Judge Saris pursuant to 28 U.S.C. § 455(a), and judgement for his claims for overtime pursuant to Fed.R.Civ.P. 12(c). [D.31]. Mr. Arbogast requests oral argument to resolve these Motions. Mr. Arbogast has filed two previous motions pursuant to Fed.R.Civ.P. 60 and incorporates them into this Motion. [D. 18, 22]. He has also filed a Motion for Reconsideration and incorporates that Motion as well. [D.25]

This lawsuit was initiated by attorney Michael J. Lambert and Sheehan, Phinney, Bass & Green P.A. (Sheehan) as part of a conspiracy with Wyeth to defraud Mr. Arbogast and the United States District Court of Massachusetts (D. Mass.). Mr. Arbogast did not authorize Lambert or Sheehan to file the lawsuit, he has never met Lambert. The United States Department

of Labor, Wage and Hour Division (WHD) investigated Wyeth in response to Mr. Arbogast's complaint against them, and issued a final Order sanctioning them for misclassifying Mr. Arbogast and over 150 of his coworkers as exempt from the overtime requirements of the Fair Labor Standards Act (FLSA). [Exhibit 1]. The official reason given by the Regional Solicitor for refusing to prosecute Wyeth, is that the case law in the 1st Circuit is "weak". [*id.*] Lambert, Sheehan, and Wyeth intended to ensure the case law remained weak be perpetrating a fraud on the court.

**<u>THERE WAS NO PROPER DISMISSAL OR JUDGMENT RENDERED</u>**

In the Orders denying Mr. Arbogast relief of final judgment in this case [D.23, 25, 26, 29], the court mistakenly interprets the Stipulation of Dismissal filed by Wyeth [D.16], as a final judgment on the merits. In 2006-2007, Fed.R.Civ.P. 41 stated in relevant part

> Rule 41. DISMISSAL OF ACTIONS
>
> (a) Voluntary Dismissal: Effect Thereof.
>
> (1) By Plaintiff; By Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of the court...(ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

The Supreme Court has stressed, "We reiterate that 'when [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000)). "The Federal Rules of Civil Procedure can properly be regarded as coming

under this rubric since they have the same force and effect as federal statutory law." *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 21 (1st Cir. 1991).

The Court knows how to specify if either party can file a stipulation of dismissal. For example, Fed.R.Civ.P. 68 states that "either party" may file the offer and notice of acceptance. See Fed.R.Civ.P. 68. "The rule against superfluities complements the principle that courts are to interpret the words of a statute in context. See 2A N. Singer, Statutes and Statutory Construction § 46.06, pp. 181-186 (rev. 6th ed. 2000) ('A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant. . . .' )" *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).

Although the Stipulation states it was filed pursuant to Fed.R.Civ.P. 41(a)(1)(ii), the Rule is clear that only a *plaintiff* can dismiss a case by filing a stipulation of dismissal. Because Wyeth, the *defendants*, filed the Stipulation, it cannot serve as a final judgment on the merits.

The Stipulation does not contain a certification of service, in violation of L.R. 5.2. Mr. Arbogast did not learn about the Stipulation until December 2018, and which time he immediately took steps to have it nullified. He never authorized the filing of the Stipulation, and it contains false material information. As a result of the lack of a certification of service, Mr. Arbogast was deceived into believing Lambert filed the Stipulation instead of Wyeth.

Neither Mr. Arbogast or any representative of his signed the Stipulation of Dismissal, which is a requirement under Fed.R.Civ.P. 41. The "/s/" block signature line with Lambert's name on the Stipulation does not represent a valid signature because of the statute of frauds among other reasons.

This is a sham lawsuit intended to ensure Wyeth and their successor, Pfizer, can continue to exploit young and vulnerable employees by forcing them to work overtime for free, and to impede their ability to engage in collective action pursuant to 29 USC § 157. Wyeth refused to comply with the WHD sanctions and provided a false Employer Identification Number to them.

The Supreme Court has ruled,

> Even in a litigation where only private rights are involved, the judgment will not be allowed to stand where one of the parties has dominated the conduct of the suit by payment of the fees of both. Here an important public interest is at stake — the validity of an Act of Congress having far-reaching effects on the public welfare in one of the most critical periods in the history of the country. That interest has been adjudicated in a proceeding in which the plaintiff has had no active participation, over which he has exercised no control, and the expense of which he has not borne. He has been only nominally represented by counsel who was selected by appellee's counsel and whom he has never seen. Such a suit is collusive because it is not in any real sense adversary. *United States v. Johnson*, 319 U.S. 302, 304-5 (1943)

Lambert and Sheehan filed the complaint in this proceeding without Mr. Arbogast's authorization. Mr. Arbogast has never met Lambert and only met an attorney from Sheehan at a public event several years after their representation of him. Mr. Arbogast did not communicate with Lambert until after he attended the June 21st, 2004 scheduling conference on his behalf. Prior to that, Lambert filed a certification pursuant to Local Rule (L.R.) 16.1(D) that falsely asserted he conferred with Mr. Arbogast about a budget for the cost of litigation and issues related to alternative dispute resolution options outlined in L.R. 16.4. The certification contained a forgery of Mr. Arbogast's signature and he did not know it existed until December 2018.

Before filing the fraudulent certification, Lambert conspired with Wyeth to violate L.R. 26.2 by ensuring no evidence was available to Judge Saris at the scheduling conference. Wyeth filed a joint statement on June 5, 2004 commemorating the conspiracy. [D.9 pg. 2]. Lambert and Sheehan knew about the WHD investigation and adjudication and concealed it from Mr.

Arbogast and the court to ensure Wyeth could continue to exploit young and vulnerable employees.

Lambert and Sheehan also possessed a trove of evidence proving other assertions in Wyeth's Answer were false. For example, Wyeth's Fourth Affirmative Defense states that Mr. Arbogast did not file a complaint before being terminated on June 30, 2004. [D.6 pg.6]. Lambert concealed from Mr. Arbogast and the court the attached records demonstrating Wyeth's Fourth Affirmative Defense was baseless. [Exhibit 2]. Lambert and Sheehan concealed the records because this was a collusive lawsuit where the role of Lambert and Sheehan was to deceive Mr. Arbogast and the court into believing he had competent legal representation when he was really being set up to be libeled through Wyeth's legal pleadings without anyone to advocate on his behalf. Wyeth, Lambert, and Sheehan wanted to make an example of Mr. Arbogast to serve as a warning to others of the severe damage to their professional reputations they will suffer if they try to assert their rights under the FLSA.

Mr. Arbogast had no meaningful participation in this proceeding. Any participation he did have was a charade meant to give the perception that the proceeding was not a sham. Mr. Arbogast exercised no control during the proceeding. He did what he was told, while his attorneys concealed their actions. Mr. Arbogast was only nominally represented by Sheehan and Lambert, who secretly limited the scope of their representation without informing him. He has never seen Lambert. Mr. Arbogast bore no costs associated with this lawsuit, Wyeth paid Lambert and Sheehan directly, contrary to the assertions in the stipulation of dismissal. By definition, this was a collusive suit.

**<u>Judge Saris Must Recuse Herself</u>**

The Supreme Court explained the following about due process,

> [D]ictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

Mr. Arbogast sought relief from being unlawfully forced to work long hours without compensation in an oppressive manner. He acquired $40,000 in non-dischargeable debt while spending years studying chemistry in an effort to avoid having to work in a factory on a production line. His debt made him vulnerable to exploitation in a manner not faced by his coworkers with only a high school diploma.

Wyeth and attorney Fitzhugh gratuitously attacked Mr. Arbogast's character, professionalism and abilities in their pleading. The pleading is a publicly accessible document that employers consider during the hiring process. Wyeth forced Mr. Arbogast to release his civil court records before hiring him. Employers assume the pleading was part of a fair adversary process. "A fair adversary process presupposes both a vigorous prosecution and a vigorous defense." *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 419 (1978). It is not easy for a heavily indebted and unemployable young man to keep his family together. The first factor in determining due process weighs in Mr. Arbogast's favor.

The risk of an erroneous deprivation of Mr. Arbogast's rights is high, as reflected in the numerous safeguards put in place for a person in his position. Congress outlawed retaliation in the FLSA statutory scheme because they knew plaintiffs became targets. (See 29 USC § 215(a)(3)). Congress included mandatory attorney's fees and court costs for prevailing plaintiffs

to ensure victims had meaningful access to the courts. (See *Id.*). The WHD maintains the confidentiality of those who file a complaint to prevent retaliation.

Most federal circuits require supervision of a judge or the DOL for settlements of FLSA claims.[1] At least two D. Mass. judges have ruled accordingly. "Parties seeking to privately settle FLSA claims require the approval of either the Department of Labor or the district court." *Drexler v. Tell Nexx, Inc.*, Civil Action No. 13-cv-13009-ADB, 2 (D. Mass. Aug. 21, 2019). "To determine whether a proposed settlement is fair and reasonable courts consider the 'totality of the circumstances,' which may include such factors as... (5) the possibility of fraud or collusion." (*Id.*). "The private settlement of FLSA claims requires the approval of either the Department of Labor or the district court." *Singleton v. AT&T Mobility Servs.*, LLC, 146 F. Supp. 3d 258, 260 (D. Mass. 2015).

Outside the context of an FLSA claim, D. Mass. recognizes the dangers faced by those in Mr. Arbogast's position litigating against organizations like Wyeth. "One objective of the Civil Justice Reform Act is to thwart attempts by wealthy or powerful litigants to impede appropriate discovery by litigants with more modest resources." (See comment for Rule 1.03 of D. Mass Expense and Delay Reduction Plan (EDRP)). D. Mass implemented Local Rules (L.R.) to prevent the erroneous deprivation of Mr. Arbogast's private rights, and no additional procedures or expenses are required. (See Fed.R.Civ.P. 16(c), 26(a)(1), and 41(a)(1); L.R. 16.1(E), (F), and

---

[1] *Samake v. Thunder Lube, Inc.*, 24 F.4th 804 (2d Cir. 2022), *Taylor v. Progress Energy*, 493 F.3d 454, 460 (4th Cir. 2007), *McConnell v. Applied Performance Techs., Inc.*, 98 F. App'x 397, 398 (6th Cir. 2004), *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986), *Seminiano v. Xyris Enter., Inc.*, No. 13-56133, 3-4 (9th Cir. May. 12, 2015), *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)

(G), 26.1(A), and 26.2). The second factor courts consider in determining due process weighs in Mr. Arbogast's favor.

The Government has a strong interest in preventing the deprivation of Mr. Arbogast's private rights because FLSA plaintiffs act in a public/private capacity. (See *Brooklyn Bank v. O'Neil*, 324 U.S. 697, 709-10 (1945), explaining the public importance of suits brought by private individuals pursuant to 29 USC § 216(b), because Congress intended them to be the primary mechanism for enforcing the statute. The Court further concluded that private contracts waiving rights under the FLSA are akin to situations that have been uniformly held void as contrary to public policy because they encourage violating the law.) The Government's interest in developing strong case law is substantial, and this proceeding represents a rare opportunity. The third factor considered regarding due process weighs in favor of Mr. Arbogast.

There are three basic due process requirements under the 5th and 14th Amendments of the U.S. Constitution. Regarding the first two; "Notice and an opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process." *Gorman v. University of Rhode Island*, 837 F.2d 7, 12-13 (1st Cir. 1988). The third requirement is an unbiased tribunal. "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975) (citing *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

Adequate notice has not been provided to Mr. Arbogast. He did not receive notice of Wyeth's Answer, and was not afforded an opportunity to defend himself against their accusations. He did not receive notice of Wyeth's Rule 68 Offer of Judgment, and was deprived an opportunity to

accept the Offer. Had he received notice of the Offer, he would not have relinquished his claim for retaliation. He did not file, or authorize the filing of the Stipulation of Dismissal, and did not receive notice that it was filed.

An opportunity to be heard has not been provided to Mr. Arbogast. He was denied an opportunity to appear at the scheduling conference. The court stated that the presence of the lead attorney ultimately responsible for the case was of the utmost importance. Lambert was only acting as local counsel for Closson, and his appearance at the scheduling conference was inadequate for due process considerations.

There has been no neutral tribunal. After the scheduling conference, Lambert phoned Mr. Arbogast and urged him to settle his claims because both he and Judge Saris believed they lacked merit. Lambert said Judge Saris wanted the case settled quickly. The assessment of Mr. Arbogast's claims was based on the pleadings. No evidence was available to Lambert or Judge Saris.

Before the scheduling conference, Wyeth filed a proposed discovery plan indicating their intention to violate L.R. 26.2 [D. 9 pg. 2]. This plan prevented the availability of information that D. Mass. considers "[t]he essential first step in a litigant's investigation of the merits of the claims and defenses". (See comment to Rule 2.02 of D. Mass. EDRP). The court ratified this plan.

In the 1st Circuit, "The employer in an FLSA case bears the burden of establishing that its employees are exempt..." *Reich v. Newspapers of New Eng., Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995). Back wages have been sought in this action because Wyeth misclassified Mr. Arbogast as exempt from the overtime requirements of the FLSA. [D.1] Wyeth's Answer failed to even

identify what exemption they were claiming pursuant to 29 USC § 213 [D. 6]. They agreed with all factual allegations relating to Mr. Arbogast's duties, and pled no facts describing his duties. Mr. Arbogast is entitled to partial judgment for his overtime claim based on the pleadings.

Judges are presumed to be impartial, "But when a judge proves unable to put aside [her] personal convictions in order to carry out the law, when [her] hostility toward a litigant's position has become so pervasive that he cannot reasonably hope to provide a fair hearing, then recusal is of course warranted." *U.S. v. Snyder*, 235 F.3d 42, 48 (1st Cir. 2000). In *Cinderella Career Finishing Sch. v. F.T.C*, 425 F.2d 583, 591 (D.C. Cir. 1970), the court explained, "The test for disqualification has been succinctly stated as being whether 'a disinterested observer may conclude that [the agency] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it.' *Gilligan, Will Co. v. SEC*, 267 F.2d 461, 469 (2d Cir.), cert. denied, 361 U.S. 896, 80 S. Ct. 200, 4 L.Ed.2d 152 (1959)." There was no basis for Judge Saris' assessment that Mr. Arbogast's claims lacked merit. Her demand that he settles his case quickly was a prejudgment that substantially contributed to depriving him of his due process rights. Only a bias judge would make such a prejudgment under the circumstances and Judge Saris must recuse herself pursuant to 28 U.S.C. § 455(a).

**Mr. Arbogast is Entitled to Judgment on his Claim for Overtime Compensation**

Wyeth has failed to plead facts establishing that Mr. Arbogast was properly classified as exempt under the FLSA. Mr. Arbogast is entitled to partial judgment based on the pleadings. Wyeth admits in their Answer that the lacked information regarding the hours Mr. Arbogast worked during his employment. Thus, Wyeth has admitted to violating 29 USC § 211 which

required them to maintain accurate records of the hours Mr. Arbogast worked. Mr. Arbogast requests an evidentiary hearing to establish how much Wyeth owes him.

**Wyeth and Fitzhugh Must be Sanctioned**

As part of the conspiracy to defraud Mr. Arbogast and the court, Wyeth and Fitzhugh agreed to aid and abet attorney Thomas M. Closson's unauthorized practice of law and breach of fiduciary duties. For example, instead of electronically serving Lambert with an Offer of Judgment pursuant to Fed.R.Civ.P. 68, Fitzhugh mailed the Offer to Closson, who concealed it from Mr. Arbogast until December 2018. In addition, Wyeth mailed Closson documents claiming to be initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) and L.R. 26.2. The disclosures were not signed by an attorney of record and contained a false certification stating that Closson was an attorney of record in the case. The disclosures were profoundly incomplete and several months late.

**Conclusion**

Wyeth, Fitzhugh, Lambert, Closson, and Sheehan used the court in furtherance of various criminal schemes mostly intended to exploit young vulnerable workers, and blue-collar workers seeking to engage in collective action pursuant to 29 USC § 157. Along the way, they defrauded the National Labor Relations Board, the WHD, the Massachusetts Attorney General's Office, and D. Mass. Mr. Arbogast respectfully requests this court stop publishing malicious and fraudulent information about Mr. Arbogast through their Public Access to Court Electronic Records (PACER) database, and issue an Order declaring that no proper dismissal or judgment exists in relation to these proceedings. Mr. Arbogast prays that the court regulate the conduct of

their officers and investigate this situation further or at least hold an evidentiary hearing. Judge Saris has demonstrated a bias by demanding that Mr. Arbogast settle his claims quickly because they lack merit, and interpreting Wyeth's filing as a proper stipulation of dismissal. No reasonable person would expect her to apply the law in an impartial manner to any further decisions in this case and she should recuse herself. Mr. Arbogast prays that the court grant him partial judgment based on the pleadings for his claim for overtime compensation against Wyeth. He also prays that the court sanction Fitzhugh and Wyeth for mailing certifications related to Fed.R.Civ.P. 26(a)(1) to Closson for an improper purpose and including false information with the intention of deceiving Mr. Arbogast.

## Oral Argument Requested

Mr. Arbogast requests oral argument to help the court determine how to rule on these motions.

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 23rd day of May 2023, this document and the attached exhibits will be mailed via the USPS to Wyeth's attorney of record and other interested parties.

Respectfully submitted,

Brent A. Arbogast pro se

Signature ____________

Date 5/23/23

Brent Arbogast
9 Maple St. Apt. C

Exeter, NH 03833
(603) 706-0559
brentarbogast@yahoo.com