UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF
MASSACHUSETTS

| | |
|---|---|
| BRENT ANDREW BRACKETT ARBOGAST,<br>Plaintiff,<br><br>vs.<br><br>WYETH<br><br>Defendants | Case No.: 1:06-CV-10333-PBS<br><br>MEMORANDUM SUPPORTING MOTION FOR RELIEF FROM PROCEEDING, AMEND COMPLAINT, REMAND, ENTRY OF APPEALABLE ORDER AND EVIDENTIARY HEARING |

**PLAINTIFF'S MEMORANDUM SUPPORTING MOTION FOR RELIEF FROM PRIOR DENIAL ORDERS AND THE 2007 PROCEEDING PURSUANT TO RULES 60(b)(4), 60(b)(6), AND 60(d)(3); REQUEST FOR LEAVE TO AMEND AND REMAND; REQUEST FOR EVIDENTIARY HEARING AND APPEALABLE ORDER ON STIPULATION**

NOW COMES Brent Andrew Brackett Arbogast, pro se, and respectfully moves this Court for relief from the June 2, 2022 Memorandum and Order (Dkt. 23), the June 28, 2022 Endorsed Order (Dkt. 29), the June 20, 2023 Electronic Order (Dkt. 36), the July 31, 2023 Endorsed Order (Dkt. 39), and from the effects of the January 22, 2007 administrative closing (Dkt. 16), which occurred upon the filing of a defective stipulation. This motion is brought pursuant to Fed. R. Civ. P. 60(b)(4) (void judgment), 60(b)(6) (any other reason justifying relief), and 60(d)(3) (fraud on the court), as well as the Court's inherent equitable power.

In the alternative, Plaintiff requests leave to amend the complaint to eliminate all federal claims and plead only state-law claims, and for remand to state court pursuant to *Royal Canin U.S.A.*,

*Inc. v. Wullschleger*, 604 U.S. __ (2025), slip op. at 6–20 (Jan. 15, 2025) (amendment deleting federal claims divests supplemental jurisdiction over remaining state claims; remand required).

Plaintiff also requests that the Court enter a conclusive, appealable order under Rule 58 (or certify under 28 U.S.C. § 1292(b) or Rule 54(b)) determining whether the defective stipulation is a valid judgment on the merits, citing *The GEO Group, Inc. v. Menocal*, No. 24-758 (U.S. Feb. 25, 2026) (strong policy favoring conclusive final orders on threshold issues to avoid piecemeal appeals).

## I. INTRODUCTION — A RECORD FOR POSTERITY

This case began on February 23, 2006, when attorney Michael J. Lambert filed a complaint in Plaintiff's name without Plaintiff's knowledge, consent, or any prior communication. (Dkt. 1). Plaintiff had never met Lambert. Plaintiff had never authorized anyone to file a lawsuit on his behalf. He was completely unaware that a federal lawsuit had been commenced in his name until weeks after it was filed.

Lambert filed the complaint as part of a conspiracy with the Defendants to prevent the U.S. Department of Labor from enforcing a final order that had already determined Wyeth misclassified Plaintiff and 156 of his coworkers, owing them substantial back wages. Evidence of that DOL investigation and final order was deliberately concealed from Plaintiff and from the Court. (See [Exhibit 1 – DOL WHISARD Report (prior Dkt. 31-1)]; see also the 2022 action, *Arbogast v. Pfizer*, No. 1:22-cv-10156-DJC (D. Mass.), Dkt. 1-3 at 174).

The proceeding culminated on January 22, 2007, when Wyeth's attorney Michael A. Fitzhugh electronically filed a document titled "Stipulation of Dismissal With Prejudice." (Dkt. 16). Plaintiff never agreed to its form or substance. Plaintiff never authorized its filing. Plaintiff never

received notice of it. The document contains no certificate of service. It was submitted using only Fitzhugh's CM/ECF username and password. [Exhibit 2 – Dkt. 16 (showing only Fitzhugh's CM/ECF signature)]; see also Standing Order (June 28, 2006) [Exhibit 3]. Under this Court's own electronic filing rules in effect at the time — rules Judge Saris expressly required everyone to follow — that means only the defendant filed it and signed it.

The Court closed the case the same day, without entering a judgment on a separate document under Rule 58, without any judicial scrutiny of the FLSA claims, and without Plaintiff ever having seen most of the key filings.

Plaintiff did not learn the extent of what had happened until December 2018, when he obtained a PACER account and began seeing documents that were concealed from him for over a decade. Since then, Plaintiff has filed multiple motions seeking relief. Each has been denied, largely on procedural grounds, without the Court addressing the fact that the "stipulation" was unilaterally filed by the defendant in violation of Rule 41(a)(1)(A)(ii) and lacks Plaintiff's signature.

In 2022 Plaintiff filed a separate action (the 2022 action) to address the fraud on the court and the state-law claims that had been concealed. Judge Casper's February 9, 2023 Memorandum and Order (Dkt. 85) expressly relied on the false premise that "Lambert filed a stipulation of dismissal." That error was carried forward on appeal in the First Circuit and Supreme Court.

This motion lays a more complete record before this Court so future generations — lawyers, judges, historians, and especially young professionals entering the workforce — can see exactly how a major pharmaceutical company, its law firm, and officers of this Court were able to use the federal judicial process to conceal wage theft affecting hundreds of workers, to file false pleadings, to file a defendant's "stipulation" unilaterally on a plaintiff's behalf (in violation of

Rule 41(a)(1)(A)(ii)), and then to have those actions treated as a valid judgment on the merits for res judicata purposes.

The proceedings in this action exemplify the known risks of fraud and collusion that federal courts have long recognized as inherent in cases brought under the FLSA. See *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945). To guard against those risks, courts in the District of Massachusetts, consistent with the majority approach, have repeatedly held that private FLSA settlements must receive judicial scrutiny to ensure they are "fair and reasonable," expressly considering factors such as "the possibility of fraud or collusion." *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260–61 (D. Mass. 2015); see also *Drexler v. TEL NEXX, Inc.*, No. 13-cv-13009-ADB, 2019 WL 3947206, at *2 (D. Mass. Aug. 21, 2019).

In the end, a prevailing party may not be apparent, but the character of those involved should be. The public has a right to this record.

## II. PROCEDURAL HISTORY AND DISTINCTION OF THE RECORD

| Docket | Date | Filing | What the Court Had | Key Ruling / Action |
|---|---|---|---|---|
| 1 | Feb 23, 2006 | Complaint | Unauthorized filing by Lambert | Case opened |
| 6 | Apr 17, 2006 | Answer with Affirmative Defenses | Defamatory allegations against Plaintiff | — |
| 11 | Jun 5, 2006 | Local Rule 16.1 Certification by Wyeth | — | — |
| 12 | Jun 16, 2006 | Plaintiff Local Rule 16.1 Certification | Forged certification (admitted false in Arbogast II) | — |

| Docket | Date | Filing | What the Court Had | Key Ruling / Action |
|---|---|---|---|---|
| 14 | Jun 21, 2006 | Scheduling Order | No initial disclosures exchanged | At Scheduling Conference Court commented claims "lacked merit" |
| 16 | Jan 22, 2007 | Stipulation of Dismissal | Unilateral filing by Fitzhugh no signature or certificate of service | Case administratively closed |
| 18 | Jan 10, 2022 | First Rule 60 motion | Alleged fraud, unauthorized filing, concealment | Denied June 2, 2022 (Dkt. 23) |
| 22 | May 25, 2022 | Second Rule 60 motion | FLSA judicial scrutiny requirement | Mooted (Dkt. 26) |
| 25 | June 10, 2022 | Motion for Reconsideration & Recusal | Hazel-Atlas fraud on the court, conflicts | Denied June 28, 2022 (Dkt. 29) |
| 31 | May 24, 2023 | Third Rule 60 motion | Unilateral filing by Wyeth, lack of certificate of service | Denied June 20, 2023 (Dkt. 36) |
| 37/38 | June 22, 2023 | Motion to Strike Stipulation + Memorandum | Detailed unilateral filing proof, Offer of Judgment | Denied July 31, 2023 (Dkt. 39) |

## III. AN INVALID PROCEEDING IS NOT A VALID JUDGMENT

Federal Rule of Civil Procedure 41(a)(1)(A)(ii) is unambiguous: a plaintiff may dismiss an action "by filing a stipulation of dismissal signed by all parties who have appeared."

The document filed on January 22, 2007 (Dkt. 16) states it is filed "[p]ursuant to Fed. R. Civ. P. 41(a)(1)(ii)." It lists signatures for both sides. But the actual filing mechanics tell a different story.

Under the District of Massachusetts CM/ECF Administrative Procedures in effect in 2007 (expressly incorporated by Judge Saris's Standing Order of June 28, 2006):

> The user log-in and password required to submit documents to the ECF system shall serve as that user's signature for purposes of Fed. R. Civ. P. 11 and for all other purposes under the Federal Rules of Civil Procedure and the Local Rules of this court. … The name of the ECF user under whose log-in and password the document is submitted must be preceded by a '/s/' …

Only Michael A. Fitzhugh's username and password were used to file Dkt. 16. Lambert never electronically signed or submitted it. There is no certificate of service. Plaintiff never authorized, saw, or consented to the filing. Plaintiff did not receive notice of it until years later.

This was not a joint stipulation but a unilateral filing by the defendant.

**The 2007 Proceeding Was an Administrative Closing — Not a Final Judgment**

The January 22, 2007 order did no more than remove this case from the active docket — an administrative closing that does not constitute a final judgment. See *Corion Corp. v. Chen*, 964 F.2d 55, 56–57 (1st Cir. 1992) (holding that an order deeming a case "administratively closed" was not a final, appealable order absent a separate document to signal the court's view that the case had concluded).

As the First Circuit explained in *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999):

> The September 30 order did no more than bring about an administrative closing of the case. Administrative closings comprise a familiar, albeit essentially ad hoc, way in which courts remove cases from their active files without making any final adjudication. … Properly understood, an administrative closing has no effect other than to remove a case from the court's active docket. … 'In no event does such an order bar a party from restoring the action to the Court's active calendar upon an appropriate application.' … Nor is the power to resurrect reserved to the parties. The court, too, retains the authority to reinstate a case if it concludes that the administrative closing was improvident or if the circumstances that sparked the closing abate. […] the time parameters specified in Rule 60(b) do not apply.

Consequently, the 2007 administrative closing placed this case in inactive status until such time as the Court, in its discretion or at the request of a party, chose either to reactivate it or to dispose of it with finality. The case remains open and subject to reinstatement upon a proper application, particularly where, as here, the closing was procured through fraud on the Court and a unilateral filing that violated Rule 41(a)(1)(A)(ii) and this Court's own Standing Order.

## IV. WYETH'S ANSWER WAS NOT FILED IN GOOD FAITH

Wyeth's Answer (Dkt. 6) is not a good-faith defense. Its credibility is fatally undermined by two blatantly false affirmative defenses.

### Sixth Affirmative Defense — No Motivation by FLSA Activity

Wyeth claimed that "the actions of Wyeth and its agents, servants and employees were not motivated in whole or in part by [Plaintiff's] pursuit of any rights he had or believed that he had under the Fair Labor Standards Act." (Dkt. 6, Sixth Affirmative Defense). The record proves otherwise.

On April 26, 2004, Plaintiff forwarded the official DOL Wage and Hour Division Fact Sheet on Technologists and Technicians to Human Resources representative Kerri Lewandowski, pressing the misclassification issue. [Exhibit 4 – 4/26/2004 email with Fact Sheet]. The very next day, April 27, 2004, Lewandowski issued the first formal discipline against Plaintiff, citing supposed "insubordinate" conduct that occurred during the very meeting she had called to discuss her investigatory efforts into the exemption status. [Exhibit 5 – Lewandowski Discipline Memo, April 27, 2004].

The investigation continued for weeks and involved senior management at multiple levels. On May 11, 2004, Lewandowski convened a final review meeting with herself and Leigh Cowdrick (Human Resources), Karin Como, Galina Szakacs, Dominique Sexton (DSS Management Team), and Eileen Blazek (Corporate Compensation) to determine the exemption status. [Exhibit 6 – Lewandowski Memo, May 11, 2004].

On May 17, 2004, Lewandowski held yet another meeting with Karin Como and Plaintiff to communicate that the investigation was complete and the DSS Technologist position was being treated as exempt. [Exhibit 7 – Lewandowski Memo, May 17, 2004].

The extensive, multi-week involvement of five members of management — including two of Plaintiff's direct supervisors and their supervisor — in response to Plaintiff's protected activity makes it implausible that Wyeth's conduct was not motivated by Plaintiff's pursuit of rights he believed he had under the FLSA. Wyeth's assertion to the contrary is false.

**Fourth Affirmative Defense — No Protected Activity Before Termination**

Wyeth asserted that Plaintiff "cannot establish a prima facie claim for retaliation under the provisions of 29 U.S.C. § 215(a)(3) … because … plaintiff did not do so prior to his termination by Wyeth." (Dkt. 6, Fourth Affirmative Defense). Under *Valerio v. Putnam Associates, Inc.*, 173 F.3d 35 (1st Cir. 1999), Plaintiff's internal complaints to management about the misclassification and non-payment of overtime constituted protected activity under the FLSA's anti-retaliation provision.

Plaintiff received his first discipline for supposed conduct that occurred during a meeting that Lewandowski called specifically to update him on the status of her investigation into the exempt

nature of his position. This makes it indisputable that Plaintiff's protected conduct precipitated the discipline.

Even if a written complaint to authorities were required, Wyeth's assertion is still false. On June 20, 2004, Plaintiff filed formal complaints with both the Massachusetts Attorney General's Office and the U.S. Department of Labor detailing the non-payment of wages, the misclassification of his position, and retaliation. The complaint to the Attorney General's office was stamped received on June 25, 2004 — five days before Plaintiff's termination on June 30, 2004. [Exhibit 8 – AG Complaint, June 20, 2004]. The DOL acknowledged receipt of Plaintiff's complaint in a letter dated July 1, 2004, confirming that the complaint had been received prior to termination. [Exhibit 9 – DOL Letter, July 1, 2004]. Wyeth possessed a copy of the Attorney General complaint, as evidenced by its internal fax transmission within the company in August 2004. It was fully aware of Plaintiff's protected activity when it terminated him, and when it filed its Answer.

**Wyeth's Scandalous and Damaging False Statements — Paragraph 14**

Wyeth's most damaging false statements appear in Paragraph 14 of its Answer, where it claims Plaintiff was reprimanded for "repeated acts of insubordination; his unprofessional communication style; and his inability to complete assigned tasks" before Plaintiff voiced any concerns about the exempt status of his position. These attacks are repeated throughout the Answer.

They are brazenly dishonest.

After working at Wyeth for approximately one week, Plaintiff approached his supervisor about misrepresentations regarding the educational requirements and the exempt status of his position.

Plaintiff's supervisor agreed that the position only required a high school diploma but was uncertain about the exempt classification. On March 24, 2004 — only nine days into Plaintiff's tenure — the supervisor presented Plaintiff with a revised job description that lowered the educational requirements from a college degree to a high school diploma. Both Plaintiff and the supervisor signed and dated the new description. [Exhibit 10 – Signed Job Description Change, March 24, 2004]. This change was made directly in response to Plaintiff's concerns about misrepresentations and the exempt nature of the position.

At the time, it was well understood — and expressly stated by the Department of Labor — that a position requiring only a high school diploma did not qualify for the learned professional exemption under the FLSA. See DOL Wage and Hour Division Fact Sheet #17O (Technologists and Technicians) ("Technologists and technicians do not meet these requirements for the learned professional exemption because they do not work in occupations that have attained recognized professional status, which requires that an advanced specialized academic degree is a standard prerequisite for entrance into the profession."); 29 C.F.R. § 541.301(b) (2004) ("Advanced knowledge cannot be attained at the high school level."). Plaintiff explicitly raised this issue with Defendant Lewandowski by emailing her the Fact Sheet on April 26, 2004. (Exhibit 4– Memo Plaintiff emailed to Lewandowski).

On April 16, 2004, Plaintiff sent an email to his supervisor explicitly mentioning the "blatantly obvious misrepresentation of this position as meeting federal guidelines for a Professional exemption" and urging that a meeting with management occur "as soon as possible." [Exhibit 11 – April 16, 2004 email].

As stated earlier, Plaintiff received his first reprimand the day after he sent Lewandowski the DOL Fact Sheet. The discipline was based on supposed conduct that occurred during a meeting

Lewandowski called to update him on the investigation. Plaintiff's original supervisor was present at the meeting and refused to contribute to the discipline because the allegations were fabrications. **That supervisor was later forced to resign for refusing to participate in Wyeth's retaliatory campaign of false attacks against Plaintiff.**

These facts undermine Wyeth's assertion in Paragraph 14 that reprimands occurred before Plaintiff voiced any concerns about the exempt status of his position. The false and damaging allegations in Wyeth's Answer were a deliberate smear, concealed from Plaintiff for twelve years so he could not defend himself.

## Plaintiff Was an Excellent Worker

Contrary to the false and malicious allegations in Wyeth's Answer, Plaintiff was an excellent worker who received consistent positive feedback and made significant contributions. Plaintiff's supervisor, Karin Como, praised his documentation as "excellent" and told him to "Keep up the great job!" Other departments commended his fast turnaround on urgent requests. [Exhibit 12 – Good Worker Documentation].

Plaintiff's contributions went beyond routine tasks. When he arrived, Wyeth kept multiple extra production machines on standby because they constantly malfunctioned, sounding alarms and creating large spills. Plaintiff quickly discovered that the plastic containers used for packaging sterilized media had incompatible dimensions with the dispensing and stacking machine. Once the proper materials arrived, the machine ran perfectly.

Plaintiff also created written procedures for complex daily tasks where none existed, including a red/green folder system that ensured workers knew the status of paperwork and prevented errors at the end of long shifts.

During a large validation project, Plaintiff suggested using already validated dispensing instruments for challenge loads instead of manually pipetting into tens of thousands of test tubes. His suggestion was well received and cut the scheduled completion time by nine business days. A congratulatory email was sent out by Chris Perley, the Vice President of Operations, and was forwarded to Plaintiff by Dominique Sexton and Karin Como saying, "Nice Job to all of you!" The validation engineer presented him with a special gift.

These contemporaneous records prove Plaintiff was a diligent, high-performing employee whose initiative enhanced efficiency. He received consistent praise from management and enjoyed warm relations with colleagues. Wyeth's fabrications alleging repeated insubordination, aggressive and unprofessional conduct, and inability to complete tasks are smears calculated to destroy Plaintiff's career and reputation. This dysfunctional conduct represents an intolerable low for a civilized society that cannot be passively facilitated by the Court.

## V. THE STIPULATION IS EVIDENCE OF A FRAUD ON THE COURT

Lambert's credibility in this proceeding has been irrevocably undermined by his admissions in the 2022 action. He admitted obtaining authorization to file the complaint from unlicensed attorney Thomas Closson, that Closson was the lead attorney, and that his own role was "very limited." He further admitted that the Local Rule 16.1 certification was false because he had never communicated with Plaintiff at all. These statements directly contradict Lambert's 2006 representations to this Court that he was Plaintiff's lead counsel, that he had conferred with Plaintiff about litigation strategy and budgets, and that the Local Rule 16.1 certification (which contained a forgery of Plaintiff's signature) was truthful. (Lambert Mem. in Supp. of Mot. to Dismiss, Dkt. 51, the 2022 action).

Lambert, Closson, Sheehan, and defense counsel Fitzhugh coordinated to file a complaint in Plaintiff's name without authorization, conceal the DOL investigation and final order finding Wyeth liable for back wages to Plaintiff and 156 coworkers [Exhibit 1], conceal Wyeth's Answer containing defamatory allegations [Dkt. 6], conceal the November 3, 2006 Offer of Judgment ($5,320 + costs) [Exhibit 13], and file a "stipulation" that directly contradicted the Offer and falsely stated each side bore its own costs [Dkt. 16].

Fitzhugh knew the Court's rules. In his own Local Rule 16.1 certification he obtained a handwritten signature and included a formal certificate of service. (Dkt. 10). Yet when filing Dkt. 16 he used only his electronic login, included no signature from Plaintiff or any authorized representative, and omitted any certificate of service. This was deliberate.

Fitzhugh knew the Court's rules. In his own Local Rule 16.1 certification he obtained a handwritten signature and included a formal certificate of service. (Dkt. 10). Yet when filing Dkt. 16 he used only his electronic login, included no signature from Plaintiff or any authorized representative, and omitted any certificate of service. This was deliberate.

This conduct is the very definition of fraud on the court. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) ("tampering with the administration of justice … is a wrong against the institutions set up to protect and safeguard the public"). The collusion rose to the level of witness tampering directed against Plaintiff: by concealing critical evidence, forging the Local Rule 16.1 certification, and filing a unilateral stipulation that misrepresented consent, those officers prevented Plaintiff from presenting the truth and distorted the truth-seeking function of the judiciary. See *González Tomasini v. Steiner*, No. 23-1914 (1st Cir. Feb. 2, 2026); *Pearson v. First NH Mortgage Corp.*, 200 F.3d 30, 38–39 (1st Cir. 1999). Such actions threaten not only Plaintiff's rights but the public's confidence in the judicial process itself.

## VI. TIMELINESS UNDER RULE 60(c)(1)

**This motion is timely under the "reasonable time" standard of Rule 60(c)(1).**

Plaintiff first learned of the concealed documents — including the stipulation (Dkt. 16), Wyeth's Answer (Dkt. 6), and the November 3, 2006 Offer of Judgment— in December 2018. The first Rule 60 motion (Dkt. 18) was filed in January 2022, approximately three years later, as quickly as reasonably possible while investigating the complex fraud, gathering records, and learning federal procedure as a pro se litigant.

The Supreme Court's recent decision in *Coney Island Auto Parts Unlimited, Inc. v. Burton*, No. 24-808 (U.S. Jan. 20, 2026), confirms that the reasonable-time inquiry is fact-specific and begins when the movant knew or reasonably should have known of the grounds for relief. Delays caused by concealment or lack of notice are excused. The First Circuit reinforced this principle in *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, No. 24-1942 (1st Cir. Feb. 2, 2026), holding that questions of discovery, concealment, and equitable tolling are typically fact questions not resolvable on the pleadings. The events currently being litigated in that case occurred more than fifteen years ago.

Massachusetts law is consistent. The fraudulent concealment statute, M.G.L. ch. 260 § 12, tolls limitations during active concealment by a party under a duty to disclose. Plaintiff's purported attorneys (Lambert, Closson, Sheehan) and the defendant owed Plaintiff fiduciary and disclosure duties. They breached those duties by concealing critical documents and the true nature of the proceeding.

The prior denials (Dkts. 23, 29, 36, 39) did not have the full record now before the Court, including the direct contradiction between the Offer of Judgment and the stipulation. The error carried forward in Judge Casper's February 9, 2023 order in the 2022 action provides additional grounds that arose after the earlier motions.

The fifteen-year period from the 2007 administrative closing is not the relevant measure. The relevant period is the time since Plaintiff discovered the fraud in 2018 and the additional facts that emerged in 2023 and 2025. Under the circumstances — coordinated concealment by officers of the Court, an unrepresented pro se plaintiff, and the extraordinary nature of a defendant unilaterally filing a "stipulation" on a plaintiff's behalf — the motion is timely.

## VII. EXTRAORDINARY CIRCUMSTANCES WARRANT RELIEF

Even if the stipulation was not void under Rule 60(b)(4), the circumstances here are extraordinary and warrant relief under Rule 60(b)(6). As detailed above, the complaint was filed without Plaintiff's knowledge or authorization (Section I), critical evidence of the DOL investigation and final order was deliberately concealed (Section V), the Local Rule 16.1 certification was forged, and the case was closed through a unilateral stipulation filed solely by defense counsel in violation of Rule 41(a)(1)(A)(ii) and this Court's Standing Order (Section III). Plaintiff received no notice or opportunity to be heard on the stipulation, the FLSA claims were dismissed without any judicial scrutiny, and a sister court was later misled by the same defective filing and used it to bar related claims.

This conduct by officers of the court strikes at the integrity of the judicial process itself. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) ("The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and

helpless victims of deception and fraud."). Judges do not issue campaign slogans. Courts are commanded to be vigilant against fraud on the judicial process even when timeliness is an issue.

## VIII. REQUEST FOR CONCLUSIVE APPEALABLE ORDER

Pursuant to *The GEO Group, Inc. v. Menocal*, No. 24-758 (U.S. Feb. 25, 2026), which emphasizes the strong policy against piecemeal appeals and the need for conclusive final orders on key threshold issues, Plaintiff respectfully requests that the Court enter a final, appealable order under Rule 58 (or certify under 28 U.S.C. § 1292(b) or Rule 54(b)) that conclusively determines whether the defective stipulation filed by the defendant (Dkt. 16) is a valid judgment on the merits permitting administrative closure of the case, particularly in the FLSA context.

The prior denials misconstrued the stipulation as a judgment. They did not address the circumstances surrounding the anomalous filing at all — defendant-filed, not signed by Plaintiff in accordance with federal rules and this Court's Standing Order, and lacking any certificate of service. Instead, they relied on an arbitrary fifteen-year time period without considering the facts that made any delay reasonable: lack of notice due to the absence of a certificate of service, confusion over who actually filed the document, and the prejudicial effects on subsequent litigation where the Court wrongly identified Plaintiff as the filer and deprived him of rights as a result.

An order would avoid piecemeal litigation and allow the First Circuit to review the issue cleanly.

## IX. APPEARANCE OF PARTIALITY AND DUE PROCESS CONCERNS

In *Coney Island Auto Parts Unlimited, Inc. v. Burton*, No. 24-808 (U.S. Jan. 20, 2026), the Supreme Court stressed the overriding importance of due process when considering whether a

Rule 60 motion is timely. Along with the issues stemming from fraud that made Plaintiff decidedly not the master of his complaint — including lack of notice and an opportunity to be heard — there is also the appearance of a biased tribunal.

A reasonable person, knowing that the presiding judge sat on the Harvard Board of Overseers with Seth Waxman (senior counsel for Wyeth) and Frances Fergusson (Wyeth Board member), and that the judge — before any evidence was presented or initial disclosures exchanged — declared the claims lacked merit and demanded quick settlement, could reasonably question the tribunal's impartiality. See 28 U.S.C. § 455(a); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). This is especially true given that the U.S. Department of Labor had already determined Wyeth misclassified Plaintiff and owed back wages (Exhibit 1), and months later Wyeth itself offered judgment on the overtime claim for $5,320 plus costs (Exhibit 13), directly contradicting the judge's early assessment of no merit.

Longstanding judicial recognition of the risks of fraud and collusion in FLSA cases led to mandates of heightened scrutiny of private settlements. See *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260–61 (D. Mass. 2015). Yet here, the Court permitted a powerful pharmaceutical corporation defending an FLSA claim to dismiss the action through a stipulation filed solely by defense counsel — unsigned by Plaintiff, without any certificate of service, and without any judicial review for fairness or consent. Placing such trust in the employer, allowing it to circumvent even bare minimum safeguards reserved for everyone, reflects bias.

## X. LEAVE TO AMEND AND REMAND TO STATE COURT

In the alternative, Plaintiff requests leave to amend the complaint to eliminate all federal claims and plead only state-law claims (adding those previously asserted in the 2022 action), and for remand to state court pursuant to *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. __ (2025), slip op. at 6–20 (Jan. 15, 2025) (post-removal amendment deleting federal claims divests supplemental jurisdiction over remaining state claims; remand required).

Upon elimination of all federal claims, this Court lacks subject-matter jurisdiction. The original federal claims were procured through fraud (unauthorized filing by Lambert, concealment of the DOL findings, and the unilateral stipulation), depriving Plaintiff of the right to pursue his state-law claims in the proper forum from the outset. The fraudulent stipulation of dismissal (Dkt. 16) further caused loss of those claims through res judicata effects, tolling any applicable statutes of limitations under Massachusetts fraudulent concealment law (M.G.L. c. 260 § 12). State interests now predominate, and the issues are complex, as evidenced by the rulings in the 2022 action that applied Massachusetts procedural rules to dismiss claims.

It was an abuse of discretion for the court in the 2022 action to maintain supplemental jurisdiction after all federal claims were dismissed. Massachusetts imposes more stringent due process requirements for a neutral tribunal than those contemplated by Congress when authorizing supplemental jurisdiction post-dismissal of federal claims. That statute was not intended to permit a federal court to retain jurisdiction solely to apply Massachusetts procedural rules while misapplying substantive state law.

Remand to state court is required and will allow full and fair adjudication of the remaining state-law claims.

## XI. REQUESTED RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant relief from the June 2, 2022 denial order (Dkt. 23) and all subsequent denial orders (Dkts. 29, 36, 39);
2. Declare the January 22, 2007 proceeding and Dkt. 16 a nullity and vacate them;
3. Enter a conclusive, appealable order under Rule 58 (or certify under § 1292(b) or Rule 54(b)) determining whether the defective stipulation is a valid judgment on the merits;
4. In the alternative, grant leave to amend the complaint [Exhibit 14] to drop federal claims and remand to state court pursuant to *Royal Canin*;
5. Schedule an evidentiary hearing on the circumstances surrounding the filing of Dkt. 16 and the concealment of documents;
6. Grant such other and further relief as the Court deems just, including referral to the U.S. Attorney for investigation of fraud on the court if warranted, and award Plaintiff costs, fees, and any other relief the Court deems equitable to remedy the fraud on the court and its consequences.

## ORAL ARGUMENT REQUESTED

A full evidentiary hearing is necessary to resolve disputed facts regarding authorization, concealment, and the filing mechanics.

Respectfully submitted,
Brent A. Arbogast

X [signature]
Brent Arbogast
2/28/26

brentarbogast@gmail.com
15 Milk St
Nashua, NH 03064
(603) 754-5616

CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 28th day of February 2026, paper copies of this document with attached exhibits were mailed to Wyeth's attorneys, Stephen T. Paterniti and Michael A. Fitzhugh via First Class Mail USPS.

2/28/26